IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CORDELIA YOCHAM,                    :      HON. JEROME B. SIMANDLE

          Plaintiff,               :      Civil No. 07-1810 (JBS)

     v.                             :

NOVARTIS PHARMACEUTICALS            :      **OPINION**
CORPORATION,                        :

          Defendant.               :

APPEARANCES:

Soleiman Khalil Raie, Esq.
THE LEVENSTEN LAW FIRM PC
1325 Spruce Street
Philadelphia, PA 19107
     Attorney for Plaintiff

Ethan D. Stein, Esq.
GIBBONS, PC
One Gateway Center
Newark, NJ 07102-5310
     Attorney for Defendant

**SIMANDLE**, District Judge:

     Plaintiff Cordelia Yocham filed this action against

Defendant Novartis Pharmaceuticals Corporation ("Novartis"),

alleging that she was injured as a result of ingesting Lamisil, a

product manufactured by Defendant.  Plaintiff, a Texas resident,

filed this lawsuit in New Jersey, where Defendant's corporate

offices are located and where the product at the heart of her

claims was tested and marketed.  Presently before the Court is

Defendant's motion [Docket Item 21] to transfer venue from this

Court to the Northern District of Texas, pursuant to 28 U.S.C. §

1404(a).  For the reasons set forth below, the Court will deny Defendant's motion.

**I.   BACKGROUND**

This lawsuit arises out of Plaintiff's allegation that she developed Steven-Johnson Syndrome ("SJS"), a painful and potentially life-threatening medical condition, as a result of having ingested Lamisil, a prescription antifungal medication manufactured and distributed by Defendant.  (Compl. ¶¶ 10-13.) Plaintiff, who resides in Ballinger, Texas, was prescribed Lamisil by her physician on April 14, 2005 to treat a toenail or fingernail infection.  (Id. at ¶¶ 2, 7.)  Plaintiff alleges that within two weeks of having used Lamisil, she developed a rash, and not long thereafter, she was admitted to the hospital and diagnosed with SJS.  (Id. at ¶ 11.)  Plaintiff was in the hospital for five days and alleges that she was permanently injured from the SJS that she alleges was the result of having taken Lamisil.  (Id. at ¶¶ 13, 17.)

Plaintiff filed this action against Defendant in the Superior Court of New Jersey on April 5, 2007.  (Docket Item 1.) Her Complaint asserts claims of negligence (Count I), strict liability (Count II), breach of express warranty (Count III), breach of implied warranty (Count IV), fraudulent misrepresentation (Count V), negligent and reckless misrepresentation (Count VI), unjust enrichment (Count VII),

2

defective design and failure to warn under the New Jersey Product Liability Act (Counts VIII and IX), and a New Jersey Consumer Fraud Act claim (Count X).[1]

In her Complaint, Plaintiff alleged that venue in the Superior Court of New Jersey was proper because Novartis' principal place of business is located in New Jersey.  (Compl. ¶ 3.)  The documentation Plaintiff has submitted in opposing Defendant's motion indicates that at least some of the clinical studies on the toxicity and side effects of Lamisil were performed in New Jersey, (Pl.'s Opp'n Br. Ex. A at 4), and Plaintiff has represented that Defendant developed and marketed Lamisil in New Jersey.  (Pl.'s Opp'n Br. Exs. A-F.)

Novartis timely removed this action to this Court on April 17, 2007.  (Docket Item 1.)  Plaintiff subsequently moved to remand this case back to the Superior Court of New Jersey, and on August 13, 2007, the Court issued an Opinion and Order denying Plaintiff's motion.  (Docket Items 17 and 18.)  Defendant then filed the motion to transfer venue presently under consideration.

---

[1]  Since the parties filed their submissions in the matter presently under consideration, the Court of Appeals for the Third Circuit issued its decision in Colacicco v. Apotex Inc., 521 F.3d 253, 256 (3d Cir. 2008), in which it addressed "whether actions taken by the Food and Drug Administration . . . pursuant to its authority under the Federal Food, Drug, and Cosmetic Act . . . and the corresponding regulatory scheme preempt . . . state-law failure-to-warn claims."  At this stage, without the benefit of the parties' briefing, the Court expresses no opinion here as to the impact of Colacicco on the viability of Plaintiff's claims.

## II.   DISCUSSION

### A.   Section 1404(a) Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2]  The Court of Appeals has explained that

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations and citations omitted).  Courts ruling on § 1404(a) motions have accordingly taken into account a wide range of public and private interests in determining whether a transfer is appropriate.

Among the private interests that the Jumara court identified as being significant to the § 1404(a) analysis are:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial

---

[2]   There is no dispute between the parties in this case that the threshold question under § 1404(a) – whether the Northern District of Texas is a "district . . . where [the case] might have been brought" – must be answered in the affirmative.

4

condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (citations omitted).  Among the public interests to be considered are:

the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).  It is well-settled that the burden on a § 1404(a) motion must be borne by the party seeking to transfer the case, and that "the motion must not be lightly granted."  Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848; see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (noting that "[t]he decision to transfer is in the court's discretion, but a transfer is not to be liberally granted") (citation omitted).

B.   Application of Section 1404(a) to this Case

In support of its motion, Defendant argues that this case should be transferred to the District Court for the Northern District of Texas, because, as Plaintiff's state of residence and the state where Plaintiff's injuries occurred and medical treatment was rendered, Texas is a more convenient, appropriate

venue than New Jersey.[3]  As the Court explains below, it finds that the private interests in this case weigh strongly against transfer, that the public interests do not tip as heavily against transfer, and that Defendant's motion should thus be denied.

      1.  <u>Private Interest Considerations</u>

First, the Court finds that the private interest considerations in this case weigh against transfer.  Foremost among the Court's concerns under this prong of the analysis is Plaintiff's decision to file this action in New Jersey.  While a plaintiff's choice of forum is clearly not entitled to dispositive weight in the § 1404(a) calculus, <u>see</u> <u>In re Consolidated Parlodel Litigation</u>, 22 F. Supp. 2d 320, 323 (D.N.J. 1998), it is black-letter law that "the plaintiff's choice of venue should not be lightly disturbed." <u>Jumara</u>, 55 F.3d at 879 (citation omitted); <u>see also</u> <u>Knierim v. Siemens Corp.</u>, No. 06-4935, 2008 WL 906244, *20 (D.N.J. Mar. 31, 2008); <u>Yang v. Odom</u>, 409 F. Supp. 2d 599, 604 (D.N.J. 2006); <u>Sandvik, Inc. v.</u>

_____

    [3]  In opposing Defendant's motion, Plaintiff relies primarily on New Jersey cases addressing the doctrine of <u>forum non conveniens</u>.  Although the Court agrees with Plaintiff that the transfer requested in Defendant's motion is not called for, it does not rely upon the <u>forum non conveniens</u> cases advanced by Plaintiff.  <u>See</u> Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3847 ("It is quite clear that a district court hearing a transfer motion need not consider the <u>forum non conveniens</u> law of the state in which the court is sitting"); <u>see also</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 253 (1981) (noting that "§ 1404(a) transfers are different than dismissals on the ground of <u>forum non conveniens</u>").

Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989).
Indeed, in light of the "paramount consideration" accorded to a
plaintiff's choice of venue, Shutte, 431 F.2d at 25, courts in
this district have recognized that "[u]nless the balance of
inconvenience of the parties is strongly in favor of Defendant,
[Plaintiff's] choice of forum should prevail." Clark v. Burger
King Corp., 255 F. Supp. 2d 334, 338 (D.N.J. 2003) (citing
Shutte, 431 F.2d at 25); see also Sandvik, 724 F. Supp. at 307
(noting that "[t]his requires something more than a mere
preponderance of the evidence in favor of transfer") (internal
quotations and citation omitted).[4]

Defendants have not shown that the remaining private
interest considerations tip "strongly" in favor of transfer. Id.
Defendants' most persuasive argument is that Texas-based third-
party witnesses – and, in particular, Plaintiff's treating
physician – "are not subject to the subpoena power of this Court"
and might be unavailable for trial in this forum. Parlodel, 22
F. Supp. 2d at 324; see also Fed. R. Civ. P. 45(b)(2) ("a

---

[4]   In closer cases than this one, courts have held that a
plaintiff's choice of forum is entitled to less weight if the
chosen forum is not the plaintiff's home forum. See Parlodel, 22
F. Supp. 2d at 323.  Where, as here, the remaining § 1404(a)
factors do not militate strongly in favor of transfer, a
plaintiff's choice of forum should not be disturbed. See Clark,
255 F. Supp. 2d at 338 (recognizing that a court may deny a
motion to transfer "even though plaintiff filed in a district
which was not his home nor the situs of events in contention")
(citing Sovereign Bank, F.S.B. v. Rochester Community Savings
Bank, 907 F. Supp. 123, 126 (E.D. Pa. 1995)).

subpoena may be served at any place . . . within the district of
the issuing court . . . [or] within 100 miles of the place
specified for the . . . trial"). However, the Court does not
find this factor sufficient to tip the balance in favor of
transfer for two reasons. First, Defendant has adduced "no
evidence that any of [these] out-of-state witnesses would be
unwilling to come voluntarily to [this District]." Dobson Bros.
Const. Co. v. D.M. Dozers, Inc., No. 06-3235, 2007 WL 258309, * 4
(D. Neb. Jan. 25, 2007). Second, and relatedly, since Plaintiff
will bear the burden of proof at trial as to the issues about
which her physician might testify, such as causation and damages,
there is every reason to expect that Plaintiff herself will
endeavor to make such witnesses available to testify at trial.[5]
The Court thus finds that this factor does not weigh heavily in
favor of transfer.

The remaining private interest factors likewise do not
militate in favor of transfer. The "location of books and
records" does not tip the scale in either direction, Jumara, 55

_____

[5] In addition, there are New Jersey-based witnesses for
whom testifying in Texas would likely be inconvenient. While
Defendant is correct that the inconvenience to non-party
witnesses is entitled to greater weight in the § 1404(a) analysis
than the inconvenience to party-employee witnesses, there are
potential New Jersey-based third-party witnesses, such as the
independent New Jersey parties who performed clinical tests on
Lamisil, who would be beyond the subpoena power of the District
Court for the Northern District of Texas. See Fed. R. Civ. P.
45(b)(2).

F.3d at 879 (citation omitted), because, as Plaintiff argues, while her medical records and other such documents are likely to be located in Texas, Novartis' documents pertaining to the development, testing, and marketing of Lamisil are located in New Jersey. Similarly, the Court does not find that considerations of where Plaintiff's "claim arose" favor either outcome, <u>id.</u>, since both venues have ties to the facts at issue in this case – although Plaintiff used Lamisil and was allegedly injured from such use in Texas, the product at the heart of her lawsuit was developed, tested, and marketed in New Jersey by a company with its corporate office in this state. Finally, while the Court recognizes Defendant's stated preference to litigate this dispute in Texas, it certainly would work no serious inconvenience against Defendant to defend this action against it in its home state. § 1404(a).

In summary, the Court finds on balance that § 1404(a)'s private interest considerations weigh strongly against transferring the case.

2. <u>Public Interest Considerations</u>

For similar reasons, the Court does not find that considerations of the public interest weigh so strongly in favor of transfer as to warrant disturbing Plaintiff's choice of forum. <u>See</u> <u>Clark</u>, 255 F. Supp. 2d at 338. First, there is no question that a judgment in this case would be equally enforceable in

Texas and New Jersey.  See id.; Jumara, 55 F.3d at 879.
Likewise, as the Court explained, supra, the likelihood that
parties, documents, and witnesses will have to be transported
from one forum to another regardless of where this case is
litigated means that "practical considerations that could make
the trial easy, expeditious, or inexpensive" do not favor either
forum.  Jumara, 55 F.3d at 879.  Similarly, while cognizant of
the principle that "local controversies" should be decided "at
home," id., the Court again notes that both fora have ties to the
facts at issue in Plaintiff's case, in that Plaintiff was
allegedly injured in Texas by a product she alleges was
negligently and/or defectively developed, tested, and marketed in
New Jersey.  This is not a case in which a plaintiff has chosen a
forum with little or no apparent connection to the facts at issue
in the case.

    Although the remaining public interest considerations could
conceivably tip in Defendant's favor, they are plainly
insufficient to meet the heavy burden a defendant bears when
moving to disturb a plaintiff's choice of forum.  See Shutte, 431
F.2d at 25; Clark, 255 F. Supp. 2d at 338; Sandvik, 724 F. Supp.
at 307.  First, while Defendant may be correct that at least some
of Plaintiff's claims may be governed by Texas law, Defendant's
argument that this factor weighs in favor of transfer proves too
much, since, under the choice-of-law analysis that either this

Court or the Texas court will eventually undertake, one court
likely will have to reckon with both New Jersey and Texas law to
determine whether a conflict between the two states' laws exists.
See Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) (court
undertaking choice-of-law analysis must examine both
jurisdictions' laws to determine whether an "actual conflict"
exists).  In any case, while the "familiarity of the trial judge
with the applicable state law," see Jumara, 55 F.3d at 380, is a
consideration that could tip the balance in an otherwise close
call, the Court notes that federal district courts are regularly
called upon to interpret the laws of jurisdictions outside of the
states in which they sit.  Disturbing Plaintiff's choice of forum
in order to spare this Court the trouble of interpreting Texas
law is simply not called for here.  Lastly, the Court agrees with
the Clark court's observation that "although courts may consider
calendar congestion in ruling upon a § 1404(a) motion, relative
congestion of the respective courts' dockets is not a factor of
great importance in this type of motion."  Clark, 255 F. Supp. 2d
at 338 (citing cases).

     As the foregoing discussion indicates, if the public
interest considerations identified in Jumara weigh in Defendant's
favor, they do so weakly.  Balancing those considerations against
the substantial weight of the private interest factors
disfavoring transfer, the Court finds that it would serve neither

11

"the convenience of parties and witnesses," nor "the interest of justice" to transfer this case.  § 1404(a).

**III. CONCLUSION**

For the reasons explained above, the Court finds that this case should not be transferred to the Northern District of Texas, and will thus deny Defendant's motion.  The accompanying Order will be entered.


**June 16, 2008**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge

12